IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LINDA J. ARMSTRONG                                                                                    PLAINTIFF

    v.                                                  CIVIL NO. 10-3005

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Linda J. Armstrong, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Title II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether the Commissioner's decision is supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on July 9, 2007, alleging inability to work since June 14, 2004, due to degenerative disc disease, neck pain, knee pain, right foot drop, and depression. (Tr. 19-21, 101-111, 200-94, 295, 296, 315-27). An administrative hearing was held on September, 16, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 453-512). By written decision dated December 18, 2008, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of

impairments that were severe. (Tr. 19). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease in her cervical spine, status-post anterior cervical diskectomy[1] and arthrodesis,[2] degenerative changes in her left acromioclavicular (AC) joint,[3] and anxiety secondary to pain. (Tr. 19). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 20). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work except that she must avoid uneven walking surfaces, she is unable to bilaterally reach overhead, drive, climb scaffolds, ladders and ropes or work at unprotected heights, around dangerous equipment/machines and with extreme vibration. In addition, the claimant can only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel and balance. Lastly, the undersigned finds that due to pain and anxiety secondary to pain, the claimant is able to engage in work that involves only non-complex simple instructions with little judgment, work that is routine, repetitive and learned by rote with few variables, work that involves only superficial contact incidental to work with the public and coworkers and work where the supervision is concrete, direct and specific.

(Tr. 22). With the help of a vocational expert (VE), the ALJ determined that Plaintiff could perform other work, such as: hotel-motel maid; shirt presser; inspector; sorter; weigher; or bench

---

[1] "Anterior" means the forward part of the organ. Dorland's Illustrated Medical Dictionary 99 (31st ed. 2007). "Cervical" means pertaining to the neck. Id. at 339. "Diskectomy" is as an excision of an intervertebral disk. Id. at 553.

[2] "Arthrodesis" is the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells. Id. at 159.

[3] "Acromioclavicular joint" is the articulation of the acromion and the clavical. Id. at 21. The "acromion" is the lateral extension of the spine of the scapula, projecting over the shoulder joint and forming the highest point of the shoulder. Id. at 21. The "clavicalula" also known as the "clavicle" is a bone, curved like the letter *f*, that articulates with the sternum and scapula, forming the anterior portion of the shoulder girdle on either side; it is also called the *collar bone*. Id. at 376.

assembler. (Tr. 27).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 8, 2009. (Tr. 3-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 10).

**II.   Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schwieker, 683 F.2d 1138, 1141 42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**III.   Discussion:**

Of particular concern to the undersigned is the ALJ's RFC determination. Specifically, the undersigned is troubled by the lack of a physical RFC assessment completed by an examining physician after the Plaintiff's neck surgery in 2007. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Guilliams v. Barnhart, 393 F.3d 798, 801 (8th

Cir. 2005). A "claimant's residual functional capacity is a medical question." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).

Prior to the Plaintiff's neck surgery, her surgeon Dr. Terry Green wrote that she "has balance problems and states she falls a lot." (Tr. 413) The Plaintiff testified that Dr. Green told her that the surgery was critical to her long-term ability to walk. (Tr. 485). On December 17, 2007, following the Plaintiff's neck surgery, Dr. Green wrote that the Plaintiff "walks well! No leg or arm probs. now coordinated." (Tr. 409). The ALJ gave this assertion substantial weight. (Tr. 24, 26). However, this statement is inconsistent with a report given on the same page of the medical records cited above, which indicates that the Plaintiff lost her balance and had pain, leg numbness, and toe numbness. (Tr. 409). Furthermore, the assertion that the Plaintiff has no leg problems is inconsistent with the sworn testimony given by the Plaintiff and her witnesses at the hearing. (Tr. 409, 473, 490, 493). Finally, the Plaintiff's complaints, prescriptions, and visits to the Flippin Clinic following her neck surgery indicate that her back pain, neck pain, anxiety, and alcohol abuse continued post-surgery. (Tr. 403-05).

The only physical RFC assessment in the record was performed prior to Plaintiff's neck surgery, and was not performed by an examining physician. (Tr. 379-86, 425-29). Since no physical RFC assessment by an examining physician was performed following the Plaintiff's neck surgery, and the medical evidence is somewhat ambiguous concerning her neck and leg problems, this Court cannot find substantial evidence to support the ALJ's finding that the Plaintiff can perform light work with limitations. Accordingly, the Court finds remand necessary so that the ALJ can more fully and fairly develop the record regarding the Plaintiff's physical RFC.

On remand, the ALJ is directed to address interrogatories to Dr. Green asking him to review the Plaintiff's medical records, complete a RFC assessment regarding the Plaintiff's capabilities during the relevant time period, and to give the objective basis for his opinion so that an informed decision by the ALJ can be made regarding the Plaintiff's ability to perform light work during the relevant time period. Further, the ALJ should specifically ask Dr. Green the extent of Plaintiff's ability to walk for a sustained period of time in relation to her ability to perform light work. Should the ALJ be unable to obtain the necessary information from Dr. Green, the Court recommends that the ALJ order a consultative exam, in which the consultative examiner should be asked to review the medical evidence of record, perform a physical examination and appropriate testing needed to properly diagnose Plaintiff's condition and level of pain, and complete a medical assessment of the Plaintiff's ability to perform work-related activities for the relevant time period in question. See 20 C.F.R. §§ 404.1517, 416.917.

The second issue of concern to the undersigned regards the ALJ's mental RFC determination. The ALJ listed as a severe impairment the Plaintiff's "anxiety secondary to pain." (Tr. 19). However, it is unclear from the decision what evidence the ALJ used to make the RFC findings. (Tr. 19, 25, 26). The record indicates that the Plaintiff has a long history of depression, suicidal thoughts, and alcohol abuse. (Tr. 101, 230, 298, 328, 349-54, 393-401, 413, 414, 471, 445-52). A review of the record indicates three evaluations of the Plaintiff's mental health: the neuropsychological examination and mental RFC questionnaire prepared by Vann Smith, Ph.D., on May 2, 2007; the mental RFC questionnaire prepared by Dr. Tammy Tucker on September 13, 2007; and the mental health treatment received through Health Resources of Arkansas on

AO72A
(Rev. 8/82)

June 19, 2009.[4] (Tr. 349-54, 393-401, 445-52).

The ALJ discounted Dr. Smith's examination by determining that it was internally inconsistent. (Tr. 19). When viewing the record as a whole, Dr. Smith's diagnosis appears inconsistent with other self-reported or professional diagnoses of the Plaintiff's mental health. The ALJ discounted Dr. Tucker's mental examination because Dr. Tucker is not a mental health professional. (Tr. 25). Dr. Tucker also indicated that she could not make an accurate assessment of the Plaintiff's mental health on the date of the questionnaire because the Plaintiff was "taking pain meds which alter [the] outcome." (Tr. 353). The most disquieting evidence of the Plaintiff's mental impairments is from Health Resources of Arkansas, but those records were not before the ALJ. (Tr. 3-6, 446). Since the only two evaluations of the Plaintiff's mental health before the ALJ were discounted, it is unclear which evidence the ALJ relied upon to determine the Plaintiff's mental capabilities. (Tr. 19). Accordingly, this Court finds remand necessary so that the ALJ can more fully and fairly develop the record regarding the Plaintiff's mental abilities.

On remand, the ALJ is directed to obtain a mental RFC assessment from an examining mental health professional, asking the examiner to review the medical evidence of record, perform a mental evaluation, and complete a mental assessment of Plaintiff's ability to perform work-related activities for the relevant time period in question. Additionally, the record reveals repeated references to alcohol use and abuse. (Tr. 201, 230, 240, 328, 330, 393, 405, 414, 446, 448, 450, 452). A drug or alcohol addiction (DAA) analysis is warranted where substance or alcohol abuse is a concern. Brueggmann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003). As the

---

[4] Once it is clear that the Appeals Council considered the new evidence, the Court must factor in this evidence and determine whether the ALJ's decision is still supported by substantial evidence. See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994).

record contains repeated references to alcohol, the ALJ should direct the mental health examiner to specifically address the Plaintiff's alcohol abuse and what impact it has on the Plaintiff's mental capabilities. Should the ALJ find that the Plaintiff is disabled, the ALJ should then determine if the Plaintiff's alcohol abuse is a contributing factor to her disability.

With the evidence obtained through the Plaintiff's physical and mental RFC assessments, the ALJ should re-evaluate the Plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

**IV.** **Conclusion**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 18th day of March, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE